UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAVERE LEE-BRYANT,

        Plaintiff,        Case No. 2:08-cv-137

v.        Honorable R. Allan Edgar

B. HALL, et al.,

        Defendants.
_____/

## **OPINION**

Plaintiff Lavere Lee-Bryant #337291, an inmate currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Corrections Officer B. Hall, Sergeant Unknown Tesserman, Investigator Dan Durant, Administrative Hearing and Rules Attorney Richard Stapleton, Parole Board Member Stephen DeBoer, Parole Board Member Charles E. Braddock, David Theut, and Thomas Tessmer.

Plaintiff's complaint alleges that on August 30, 2005, Defendant Hall demanded a "pat down" search of Plaintiff, who was exiting the area. Defendant Hall asked to see Plaintiff's identification, and Plaintiff explained that an officer had previously taken his identification and had refused to return it. Defendant Hall excused Plaintiff and he returned to the unit. Defendant Hall then wrote a major misconduct on Plaintiff for being out of place, stating:

> . . . this officer conducted a routine shakedown on Prisoner Lee-Bryant #337291 . . . and could not find a state ID card to be in his possession. Lee-Bryant stated to this officer "that another officer had taken his ID card during the breakfast meal." Lee-Bryant did not have a pass to be in the Chow Hall for the lunch meal . . .

(*See* Plaintiff's complaint, ¶ 3.)

Plaintiff states that Defendant Hall knew that being out of place is not a rule violation for the purpose of instituting "judicial civil penal proceedings." On August 31, 2005, Defendant Tesserman administered a review hearing and assigned Defendant Durant as investigator for the incident. On September 7, 2005, Defendant Durant interviewed Plaintiff, who requested Resident Unit Officer Blamer as a witness. Plaintiff claims that Blamer knew he did not have his ID, but directed him to go to the Chow Hall anyway. Plaintiff also sought L. Hough and Resident Unit Officer D. Sindles as witnesses to the fact that an officer had taken his ID card and had refused to return it. Plaintiff further submitted his statement of the facts.

Plaintiff alleges that on September 8, 2005, Defendant Durant asked each witness three questions in lieu of asking the questions Plaintiff had requested. The questions were:

1. Did prisoner Lee-Bryant 337291 tell you that he did not have a ID card on 8/30/05?, prior to 1244 hrs?

2. If yes, did prisoner Lee-Bryant 337291 ask you for a temporary ID card to go to lunch on 8/30/05?

3. If yes, did you write a temporary ID out for him?

(*See* Plaintiff's complaint, ¶ 7.) Plaintiff states that Sindles and Hough answered "no" to each question and that Blamer answered "yes" to question 1, but "no" to the remaining questions.

On September 14, 2005, Defendant Theut conducted a hearing on the misconduct ticket and found Plaintiff guilty. Defendant Theut found that it was no defense that Plaintiff's ID had been taken because Plaintiff was required to obtain a temporary ID when leaving the housing unit. Defendant Theut sentenced Plaintiff to seven days on top lock and the loss of seven days of disciplinary time. In addition, a copy of the misconduct ticket and hearing report was forwarded to the Parole Board. Defendant Stapleton denied Plaintiff's request for a rehearing. On October 10,

2

2006, Defendants Braddock and DeBoer denied Plaintiff parole. On February 27, 2008, Cheryl Soeltner refused Plaintiff's Freedom of Information Request for the full first names of Defendants Hall and Tesserman, as well as for witnesses Blamer and Sindles.

On May 24, 2010, Plaintiff filed a motion to amend his complaint (docket #56), and on August 11, 2010, Plaintiff filed a proposed amended complaint (docket #72). In the proposed amended complaint, Plaintiff restated his allegations against Defendants and asserted that in addition to violating his due process rights, Defendants' conduct violated his rights under the Privileges or Immunities Clause of the Fourteenth Amendment. Plaintiff also asserts state law claims of malicious prosecution, obstruction of justice and false imprisonment. Defendants responded to the allegations in Plaintiff's proposed amended complaint in their October 29, 2010 motion for summary judgment (docket #75). The court will grant Plaintiff's motion to amend (docket #56) and consider Plaintiff's amended complaint in the context of this opinion.

On October 16, 2008, the court dismissed Plaintiff's complaint for failing to state a claim upon which relief can be granted (docket #11). Plaintiff filed an appeal. On June 15, 2009, the Sixth Circuit issued an order vacating the dismissal of Plaintiff's due process claims and remanding the case to this court for further proceedings on those claims. In the order, the Sixth Circuit noted that because the possible success of Plaintiff's due process claims would not restore lost good-time credits or necessarily affect the duration of his confinement, the "habeas exception" described in *Preiser v. Rodriguez*, 411 U.S. 475 (1973), *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997) is not implicated. (Docket #22, p. 2.)

Presently before the Court are the Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #62 and #75). Plaintiff has filed responses (docket #68 and #77) and the matter is ready for decision. Summary judgment is appropriate only if the moving party

3

establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendant Stapleton asserts that he is entitled to absolute judicial immunity from Plaintiff's claims. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31,

2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). According to Plaintiff's complaint, Defendant Stapleton denied Plaintiff's request for rehearing on July 12, 2006. Therefore, Defendant Stapleton is absolutely immune under the circumstances of this case.

The court notes that in his complaint, Plaintiff alleges that Defendant Theut conducted the hearing on the misconduct ticket and found Plaintiff guilty. Defendant Theut found that it was no defense that Plaintiff's ID had been taken because Plaintiff was required to obtain a temporary ID when leaving the housing unit. Defendant Theut sentenced Plaintiff to seven days on top lock and the loss of seven days of disciplinary time. Because these actions were taken in Defendant Theut's capacity as hearing officer, he is entitled to absolute judicial immunity.

Defendants claim that they are entitled to summary judgment on Plaintiff's due process claims because federal courts do not have jurisdiction to relitigate de novo the determinations made in prison disciplinary hearings, so long as there is some evidence in the record to support the factfinder's decision. In addition, Defendants state that Plaintiff received all the process that he was due. Defendants offer a copy of the misconduct report, the hearing report, and the rehearing record for the August 30, 2005 violation, as well as Plaintiff's statement. In the hearing report, Hearing Officer Theut considered the following evidence:

> Prisoner is present for the hearing and the misconduct report is reviewed with the prisoner along with a statement from L. Hough, a statement from officers Sindles and Blamer. A statement from Lee-Bryant is reviewed by the hearing officer. Prisoner Lee-Bryant states that he requested the video from 1-22 that will show him picking up his ID card from officer Sindles. He states that he stopped to speak with officer Blamer at the officer station and told officer Blamer that

5

he had no ID card. He states officer Sindles told him to go to the dining hall and when he came back he spoke to [Assistant Resident Unit Supervisor] Hough. He states he wants the call out to the library to show that he had no ID card and they refused to allow him to go to the law library. Prisoner Lee-Bryant declines further statement. Prisoner is informed of the sanction and the decision and told that a copy of the hearing report would be delivered to him.

(Defendants' Exhibit B, Attachment 2.)

In the reason for finding, Defendant Theut states:

The video and the call out are not relevant and would not prove or disprove the charge. The question number one for officer Sindles and questions 1, 2, and 3 for officer Blamer are not relevant and would not prove or disprove the charge. On 8-30-05 at 1214 hrs officer Hall searched prisoner Lee-Bryant in the dining hall and he had no state ID card on his person and no staff authorization to be in food service with out his ID card and all prisoners are required to have an ID card on their person while outside of their housing unit. Prisoner Lee-Bryant is not believed in his statement that officer Sindles told him to go to the dining hall because officer Sindles indicates prisoner Lee-Bryant did not tell him he had no ID card on 8-30-05 prior to 1214 hrs. It is no defense to the charge that prisoner Lee-Bryant may have had his ID card taken by another officer that morning in the dining hall or that he informed officer Blamer that he had no ID card, because prisoners are required to obtain a temporary ID card when leaving their own housing unit which prisoner Lee-Bryant did not do and pursuant to the prisoner discipline PD 03.03.105 being outside a persons [sic] own housing unit with out an ID card is a major misconduct. Officer Sindles and Blamer and officer Hall are clear and detailed in their statements and found credible. The charge is upheld.

(Defendants' Exhibit B, Attachment 2.)

As noted by Defendants, federal courts do not have jurisdiction to relitigate the determinations made in prison disciplinary hearings. The function of this court is not to provide de novo review of the decision made by the hearings officer, or to ensure that the decision was correct. It is not the role of the federal court to assess the credibility of the witnesses, weigh the evidence, or second guess the fact-finder's decision. *Superintendent, Massachusetts Correctional Institute at*

*Walpole v. Hill*, 472 U.S. 445 (1985); *see also*, *Chambers v. Koehler*, 635 F. Supp. 884, 888 (W.D. Mich. 1984). The function of this court is to ensure that Plaintiff's constitutional right to due process of law was not arbitrarily denied or abrogated. So long as Plaintiff received that process which was due under the Constitution, Plaintiff's procedural due process rights are not violated by a wrong result or improper motivation.

Under the Constitution, prison inmates subject to disciplinary action are entitled to the following process: (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). Plaintiff does not contest that he received the proper notice. Moreover, the record shows that Plaintiff received an opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence and a written statement regarding the evidence being relied upon for the guilty finding.

The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the

7

deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70, 94 S. Ct. 2963, 2981 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

Plaintiff here claims that he was not able to present all the evidence he wished during the hearing, and that Defendant Theut was not impartial. However, the Constitution does not require that a prisoner be allowed an unlimited ability to present evidence, merely that he be given the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon*, 494 U.S. at 127-28. Nor has Plaintiff alleged any specific facts showing that Defendant Theut was biased. Therefore, because Plaintiff has received the process due him pursuant to the Constitution, Defendants are entitled to summary judgment on Plaintiff's due process claims.

Defendants state that they did not violate Plaintiff's rights under the Privileges or Immunity Clause of the Fourteenth Amendment. The Privileges or Immunities Clause of the Fourteenth Amendment declares that "[n]o State ... shall abridge the privileges or immunities of citizens of the United States."

> In the *Slaughter-House Cases,* 16 Wall. 36, 78-80, 21 L.Ed. 394 (1873), the Court was careful to hold that federal citizenship in and of itself suffices for the assertion of rights under the Constitution, rights that stem from sources other than the States. Though the *Slaughter-House Cases* interpreted the Privileges and Immunities Clause of the Fourteenth Amendment, its view of the origins of federal citizenship was not confined to that source. Referring to these rights of national dimension and origin the Court observed: "But lest it should be said that no such privileges and immunities are to be found if those we have been considering are excluded, we venture to suggest some which owe their existence to the Federal government, its National character, its Constitution, or its laws." *Id.,* at 79. Later cases only reinforced the idea that there are such incidents of national citizenship. See *\*844 Ex*

8

> *parte Yarbrough, supra; Terral v. Burke Constr. Co.,* 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352 (1922); *United States v. Classic, supra; United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Federal privileges and immunities may seem limited in their formulation by comparison with the expansive definition given to the privileges and immunities attributed to state citizenship, see *Slaughter-House Cases, supra,* at 78; *Hague, supra,* at 520, 59 S.Ct., at 966 (opinion of Stone, J.), but that federal rights flow to the people of the United States by virtue of national citizenship is beyond dispute.

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 843-844 (U.S. 1995).

Plaintiff asserts that he was denied immunity from judicial prosecution in violation of the Privileges or Immunity Clause. However, Plaintiff fails to explain how this Clause protects him from being prosecuted for a prison misconduct. Therefore, Defendants are entitled to summary judgment on Plaintiff's Privileges or Immunity Clause claim.

To the extent that Plaintiff is claiming his state law rights were violated, the court will refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719, 728 (6th Cir. 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S. Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties,

> by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966).

Finally, Defendants claim that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard

to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, Defendants' Motions for Summary Judgment (docket #62 and #75) will be granted and this case will be dismissed in its entirety.

In addition, Plaintiff's pending motion to strike the appointment of attorney for Defendants Hall, Durant, Stapleton and Tessmer (docket #54) and his motion for relief from the denial of costs (docket #58) will be denied. As noted above, Plaintiff's motion to amend his complaint (docket #56) is granted and the allegations in his amended complaint (docket #72) have been considered as part of the record in this case.

An Order and Judgment consistent with this Opinion will be entered.

Dated: 3/14/2011      /s/ R. Allan Edgar
                     R. Allan Edgar
                     United States District Judge